IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FATA H., | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | No. 21-cv-4161 |
|     v. | ) | |
| | ) | Magistrate Judge Jeffrey I. Cummings |
| KILOLO KIJAKAZI,[1] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
|     Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Fata H. ("Claimant") moves to reverse the final decision of the Commissioner of Social Security's ("Commissioner") denial of Claimant's application for Disability Insurance Benefits ("DIBs"). (Dckt. #19). The Commissioner seeks summary judgment, (Dckt. #20), asking this Court to uphold the decision to deny benefits. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. §636(c). This Court has jurisdiction to hear this matter pursuant to 42 U.S.C. §405(g). For the reasons that follow, Claimant's motion to reverse the decision of the Commissioner is denied, and the Commissioner's motion for summary judgment is granted.

**I.    BACKGROUND**

    **A.    Procedural History**

On April 10, 2019, Claimant (then fifty-two years old) filed an application for DIBs alleging disability beginning June 18, 2015, due to chronic fatigue, depression, anxiety, balance issues, insomnia, chronic pain, gastroesophageal reflux disease ("GERD"), high cholesterol, and

---

[1] In accordance with Internal Operating Procedure 22 – Privacy in Social Security Opinions, the Court refers to Claimant only by her first name and the first initial of her last name.

1

chronic panic attacks. (R. 60, 118). Her application was denied initially on October 2, 2019, and upon reconsideration on June 26, 2020. (R. 104-17, 139-57). Claimant filed a timely request for a hearing, which was held via telephone on December 2, 2020. (R. 83-103). Claimant, who appeared with counsel, testified at the hearing as did a vocational expert ("VE"). (*Id*.). On January 7, 2021, the ALJ issued a written decision denying Claimant's application for benefits. (R. 57-82). Claimant timely requested review with the Appeals Council, which denied her request on June 8, 2021, (R. 1-6), leaving the ALJ's decision as the final decision of the Commissioner. This action followed.

### B. The Social Security Administration Standard to Recover Benefits

In order to qualify for disability benefits, a claimant must demonstrate that she is disabled. An individual does so by showing that she cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Gainful activity is defined as "the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. §404.1572(b).

The Social Security Administration ("SSA") applies a five-step analysis to disability claims. 20 C.F.R. §404.1520. The SSA first considers whether the claimant has engaged in substantial gainful activity during the claimed period of disability. 20 C.F.R. §404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has one or more medically determinable physical or mental impairments. 20 C.F.R. §404.1521. An impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Id.* In other words, a physical or mental impairment "must be established by objective medical evidence from an acceptable

medical source." *Id.*; *Shirley R. v. Saul*, 1:18-cv-00429-JVB, 2019 WL 5418118, at *2 (N.D.Ind. Oct. 22, 2019). If the claimant establishes that she has one or more physical or mental impairments, the ALJ then determines whether the impairment(s) standing alone, or in combination, are severe and meet the twelve-month duration requirement noted above. 20 C.F.R. §404.1520(a)(4)(ii).

At step three, the SSA compares the impairment or combination of impairments found at step two to a list of impairments identified in the regulations ("the listings"). The specific criteria that must be met to satisfy a listing are described in Appendix 1 of the regulations. 20 C.F.R. Pt. 404, Subpt. P, App. 1. If the claimant's impairments meet or "medically equal" a listing, she is considered to be disabled, and the analysis concludes. If the listing is not met, the analysis proceeds to step four. 20 C.F.R. §404.1520(a)(4)(iii).

Before addressing the fourth step, the SSA must assess the claimant's residual functional capacity ("RFC"), which defines her exertional and non-exertional capacity to work despite the limitations imposed by her impairments. The SSA then determines at step four whether the claimant is able to engage in any of her past relevant work. 20 C.F.R. §404.1520(a)(4)(iv). If the claimant can do so, she is not disabled. *Id*. If the claimant cannot undertake her past work, the SSA proceeds to step five to determine whether a substantial number of jobs exist that the claimant can perform in light of her RFC, age, education, and work experience. An individual is not disabled if she can do work that is available under this standard. 20 C.F.R. §404.1520(a)(4)(v).

C. **The ALJ's Decision**

The ALJ applied the five-step inquiry required by the Act in reaching his decision to deny Claimant's request for benefits. At step one, the ALJ found that Claimant had not engaged

3

in substantial gainful activity since the alleged onset date of June 18, 2015, and that Claimant met the insured status requirements of the Act through December 31, 2020. (R. 63). At step two, the ALJ determined that Claimant suffered from severe impairments of: degenerative disc disease of the lumbar spine, arthritis of the right shoulder, anxiety, depression, post-traumatic stress disorder ("PTSD"), and obesity. (*Id.*).

At step three, the ALJ found that Claimant had no impairment or combination of impairments that meets or medically equals one of the listed impairments in the Regulations. (*Id.*). Specifically, the ALJ considered each of the following listings: (1) 1.02 ("Major dysfunction of a joint"); (2) 1.04 ("Disorders of the spine"); (3) 5.06 ("Inflammatory bowel disease"); (4) 14.09 ("Inflammatory arthritis"); (5) 12.04 ("Depressive, bipolar and related disorders"); (6) 12.06 ("Anxiety and obsessive-compulsive disorders"); and (7) 12.15 ("Trauma and stressor related disorders"). (R. 63-64).

Before turning to step four, the ALJ concluded that Claimant had the RFC:

> [T]o perform light work as defined in 20 CFR 404.1567(b). She can occasionally climb ladders, ropes, scaffolds, ramps, or stairs. She may frequently balance, stoop, and crawl. She must avoid concentrated exposure to dangerous moving machinery and unprotected heights. She is limited to work involving simple tasks. She may have only occasional interaction with the public, in the work setting, and only occasional interaction with co-workers with no tandem tasks involved.

(R. 65). At step four, the ALJ concluded that Claimant could not perform her past work as a maintenance worker. (R. 75). Finally, at step five, the ALJ concluded that jobs existed in significant numbers in the national economy that Claimant could perform, including roles as a bottling line attendant (12,000 nationally-available jobs); housecleaner (120,000 jobs); and bagger (15,000 jobs). (R. 76). Thus, the ALJ found that Claimant was not under a disability from June 18, 2015 through January 7, 2021, the date of the decision. (*Id.*).

II.     STANDARD OF REVIEW

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. Judicial review of an ALJ's decision is governed by 42 U.S.C. §405(g), which provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). "Substantial evidence is not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021), *quoting Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal quotation marks omitted). The Commissioner's decision must also be based on the proper legal criteria and free from legal error. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

A court reviews the entire record, but it does not displace the ALJ's judgment by reweighing the facts, resolving conflicts, deciding credibility questions, making independent symptom evaluations, or otherwise substituting its judgment for that of the Commissioner. *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011); *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Instead, the court determines whether the ALJ articulated an "accurate and logical bridge" from the evidence to his conclusions. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). This requirement is designed to allow a reviewing court to "assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). Thus, even if reasonable minds could differ as to whether the claimant is disabled, courts will affirm a decision if the ALJ's opinion is adequately explained and supported by substantial evidence. *Elder*, 529 F.3d at 413 (citation omitted).

### III. ANALYSIS

Claimant raises several arguments in support of remand. Specifically, she argues that: (1) the ALJ improperly evaluated the medical opinions given by two of her treating physicians regarding Claimant's mental limitations; (2) the ALJ improperly discredited her subjective statements regarding her limitations; and (3) the ALJ failed to support the RFC with substantial evidence. (Dckt. #19 at 4-16). As explained below, the Court disagrees with each contention and therefore affirms the ALJ's decision.

    **A.    The ALJ's assessment of the medical opinion evidence is supported by substantial evidence.**

As of March 27, 2017, ALJs are no longer mandated to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. §404.1520c(a); *see also Mesha C. v. Kijakazi*, No. 21 C 6451, 2023 WL 2663569, at *2 (N.D.Ill. Mar. 28, 2023). Instead, ALJs will consider "supportability, consistency, the relationship of the treater with the claimant, specialization, and other factors that tend to support or contradict a medical opinion or prior administrative medical finding." *Bethany G. v. Kijakazi*, No. 20-cv-50483, 2023 WL 2683501, at *3 (N.D.Ill. Mar. 29, 2023) (citing 20 C.F.R. §404.1520c(a), (c)). Consistency and supportability are the most important factors and courts "will not vacate or reverse an ALJ's decision based solely on a failure to expressly list every checklist factor, [but courts] do expect the ALJ to analyze the treating source's medical opinion 'within the multifactor framework delineated' in the regulation.'" *Bethany G.*, 2023 WL 2683501, at *3, *quoting Ray v. Saul*, 861 Fed.Appx. 102, 105 (7th Cir. 2021) (citations omitted); 20 C.F.R. §404.1520c(b)(2).

6

Here, the ALJ considered the opinions of Claimant's primary care physician Dr. Jasminka Kostic and treating psychiatrist Dr. Anjum Khaja in succession and determined that neither was persuasive. (R. 73-74). Claimant now argues that the ALJ gave insufficient reasoning for those findings. (Dckt. #19 at 5, 8). In particular, Claimant asserts that the ALJ improperly assessed the medical opinions under the Regulations when he: "mentioned some abnormal [mental health] findings but did not analyze them"; "selectively highlight[ed] normal findings and fail[ed] to explain why they were more persuasive than myriad abnormal findings in the record"; and improperly discounted the physicians' opinions that her mental impairments would cause her to miss work and limit her ability to remain on task at the workplace. (Dckt. #19 at 5, 8-10).[2] The Court disagrees for the following reasons.

Dr. Khaja submitted a May 11, 2019 "Mental Impairment Questionnaire" on Claimant's behalf, in which she diagnosed Claimant with major depressive disorder and PTSD and opined that Claimant's impairments or treatment would cause her to miss more than three workdays per month and resulted in marked limitations in her ability to concentrate, persist, or maintain pace, as well as to adapt or manage herself. (R. 384-86). Dr. Khaja completed a checkmark table within the form where she indicated Claimant suffered at least mild limitations in every possible ability needed to perform unskilled work. (R. 385). Dr. Kostic likewise completed a medical source statement on Claimant's behalf on April 12, 2019, in which she opined that Claimant's

---

[2] The Commissioner asserts that Claimant "challenged only the ALJ's evaluation of her mental impairments" and has therefore waived any challenge to the ALJ's assessment of her physical impairments. (Dckt. #21 at 1). Although Claimant does reference her physical impairments in three footnotes, (see Dckt. #19 at 4 n.1, at 9 nn.2, 3), the Court finds that she has indeed waived any argument related to her physical impairments by referencing them only in footnotes and failing to respond to the Commissioner's waiver argument in her reply. *See, e.g., Harmon v. Gordon*, 712 F.3d 1044, 1053 (7th Cir. 2013) ("We have often said that a party can waive an argument by presenting it only in an undeveloped footnote") (citing cases); *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) (a party's failure to respond to its opponent's argument in the party's reply brief waives the party's challenge on the issue) (citing cases).

7

impairments would constantly interfere with her attention and concentration, disabling her ability to perform even simple tasks and cause her to miss at least four days of work per month. (R. 739-41).

The ALJ rejected both physicians' opinions. With respect to Dr. Khaja's finding that Claimant had moderate to marked limitations in almost all mental abilities, the ALJ found that:

> [T]he level of limitation assessed is not supported by the record as a whole or by Dr. Khaja's own treatment records. Indeed, while [Claimant] initially demonstrated some difficulties with concentration and attention, she reported that her moods and overall thinking had been better since being on medication. Mental status examinations have been essentially baseline and within normal limits. [Claimant] reported that she had not worked since she was injured on the job in 2015, but indicated that she was able to manage previous worker's compensation benefits as well as a Link card. Moreover, this level of limitation is not consistent with [Claimant] taking two extensive trips to Bosnia in August 2018 and in April 2019. [Claimant] has denied flashbacks and reported getting 6-7 hours of sleep on trazodone.

(R. 74-75) (internal citations omitted).

The ALJ also rejected Dr. Kostic's opinion, finding that although she:

> opined that the claimant would miss more than four days of work per month [due to mental health impairments] . . . . These statements have been considered but are not persuasive, as they are not supported by the record, including Dr. Kostic's own treatment records, which show little in the way of objective clinical findings. The off work statements are temporary in nature and are not consistent with the [SSA's] criteria for disability. . . Additionally, I note that Dr. Kostic opined that the claimant would miss work due to her mental impairments. Dr. Kostic is not a mental health provider and this statement appears to be related to the claimant's subjective complaints, rather than by objective clinical findings or a need for a higher level of care in this regard. This is also not supported by mental health treatment records . . . or by the claimant's ability to maintain a schedule for appointments and travel.

(R. 73-74) (internal citations omitted).

The ALJ instead found that:

> I am persuaded that the claimant's mental impairments impose mild to moderate limitations. The claimant testified that she prefers to stay at home by herself and said that she has experienced difficulties with her memory. However, the record shows that she has responded well to medication and that mental status

> examinations have remained within normal limits, even with some lapses in medications. The claimant reported that her children help with household chores and transportation, which indicates that she spends time with them. The claimant has also reported an ability to travel to Bosnia for several months at a time, which would require her to understand and follow through with travel preparations, navigating the airport, and being in crowds at the airport and in the airplane. There is no evidence that she has had difficulty in this regard. The record also shows that the claimant has been able to attend numerous appointments and is able to relate well with examiners and follow through on treatment recommendations. There is no evidence of a need for urgent or emergency treatment due to an exacerbation of mental health symptoms.

(R. 71-72) (internal citations omitted).

In support of his findings, the ALJ thoroughly outlined Claimant's history of her mental health illnesses – with coinciding citations to the record – that weighed for *and* against a finding of impairment stemming from her anxiety, depression, and PTSD. (R. 67-71 (citing medical records)). For example, the ALJ related that Claimant met with numerous providers beginning in April 2016 when she complained of nightmares and flashbacks with disturbed sleep. (R. 70). The ALJ noted that when Claimant began psychiatric medication management with Dr. Khaja in April 2017, she reported improved mood and denied mania, agitation, or perceptual disturbances. (*Id*). Despite some instances of forgetfulness, the ALJ accurately described Claimant's examinations through the middle of 2019 as mostly baseline and within normal limits when taking medication. (R. 70-71 (citing, *e.g.*, R. 387-423)). Within his discretion, he found those records, taken in totality, did not support Drs. Kostic or Khaja's opinions because they often showed unremarkable mental health findings within normal limits. (R. 22-24 (citing, *e.g.*, R. 1043-47, 1058-60, 1073, 1077, 1084, 1090-92, 1103-04)); *see Karr*, 989 F.3d at 512 (ALJ justified in discounting medical opinion based on the weight of the medical record).

Furthermore, the ALJ cited to Drs. Khaja and Kostic's own treatment records which contained mental health findings both supporting *and* contradicting their opinions of Claimant's

9

mental condition[3] and properly supported his finding that the physicians' opinions were unpersuasive by pointing to Claimant's mental health treatment records that undermined them. (R. 74-75); *see Pavlicek v. Saul*, 994 F.3d 777, 781 (7th Cir. 2021) (an ALJ may decline to credit a treating physician's opinion when it "is inconsistent with the physician's treatment notes"); *Fair v. Saul*, 853 Fed.Appx. 17, 21 (7th Cir. 2021) (ALJ properly discounted physician's opinions because his "own records did not support his conclusions"); *see also Desotelle v. Kijakazi*, No. 22-1602, 2023 WL 4146246, at *2 (7th Cir. June 23, 2023) ("the 'most important factors' an ALJ considers are the [medical] opinion's 'supportability' and 'consistency' with the record.").

Next, the ALJ relied on the findings of state agency psychological consultants David Voss, Ph.D., and M.W. DiFonso, Psy.D., who "opined that the claimant can maintain the concentration and persistence necessary to carry out more than simple tasks in a reasonably punctual fashion and consistent pace in a typical work environment" and "would have no difficulty attending work regularly and would require no special supervision beyond what is commonly provided in an ordinary work setting." (R. 72-73). In finding the consulting physicians' opinions persuasive, the ALJ noted that each found that Claimant's "medically determinable impairments would not interfere significantly with her ability to complete a typical workday." (*Id.*). The ALJ was permitted to discount Drs. Kostic and Khaja's opinions where they were inconsistent with the opinions of the state agency consulting physicians. *Crowell v. Kijakazi*, 72 F.4th 810, 816 (7th Cir. 2023) ("An administrative law judge may give more weight

---

[3] Claimant herself noted one such contradiction. (*See* Dckt. #19 at 6 ("the ALJ noted some initial difficulty with concentration and attention, improvement with medications, and mental status examinations 'essentially baseline and within normal limits.'")). Claimant similarly concedes that Dr. Kostic "did not opine that [Claimant's] mental impairments would produce specific functional limitations," but simply noted Claimant was diagnosed with mental impairments that affect her ability to sustain work. (Dckt. #19 at 8).

10

to the state agency psychologists provided the judge examines the appropriate factors under the agency regulations and minimally articulates its reasoning for crediting the opinions of the non-treating agency medical experts."); *Baptist v. Kijakazi*, 74 F.4th 437, 444 (7th Cir. 2023); *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008) ("if the treating physician's opinion is inconsistent with the consulting physician's opinion, [or] internally inconsistent," an ALJ can discount it). The ALJ was also justified in relying on the fact that Dr. Kostic, who "is not a mental health provider," based her opinion on Claimant's subjective complaints. (R. 73-74); *Prill v. Kijakazi*, 23 F.4th 738, 751 (7th Cir. 2022) ("when a physician's opinion is based primarily upon a patient's subjective complaints, the ALJ may discount that opinion.") (citations omitted); *see* 20 C.F.R. §404.1520c(c)(3)-(4).

Finally, the ALJ cited to Claimant's ability to take trips to Bosnia for two months in 2018 and for three-and-a-half months in 2019 to see her ailing parents as being inconsistent with Dr. Khaja's opinion that she had moderate to marked limitations in almost all areas of mental abilities (including the inability to interact with others). (R. 71, 74-75, 389, 414); (*see* Dckt. #19 at 15 (referencing Dr. Khaja's opinion that Claimant "preferred to be alone and spen[d] much of her time in bed")). The ALJ noted that Claimant's "travel to Bosnia for several months at a time . . . would require her to understand and follow through with travel preparations, navigat[e] the airport, and be[] in crowds at the airport and in the airplane" for hours and "[t]here is no evidence that she had any difficulty in this regard." (R. 71).[4] The ALJ further noted that

---

[4] Claimant asserts that she did not make her own travel plans. (Dckt. #19 at 14). The record is silent on this point but presuming that Claimant is correct, it does not undermine the inferences arising from the fact that Claimant executed the travel plans by spending multiple hours in the airports to wait for her flights, clear customs, manage her luggage, and engage with other travelers and airline staff both in the airports and during the long flights on each leg of her trips to and from Bosnia.

Claimant reported that she was feeling better after her three-and-a-half-month trip to Bosnia in 2019 even though she ran out of her medication two weeks before she returned. (R. 71).

Given the severity of the limitations alleged by Dr. Khaja and the known details of Claimant's multi-month international trips, the ALJ did not err by considering these facts in assessing her opinion. *See, e.g., Behlman v. Saul*, No. 19-C-1147, 2020 WL 6889187, at *6 (E.D.Wis. Nov. 24, 2020) (where claimant alleged a severe mental impairment which she claimed prevented her from getting out of bed, the ALJ did not err in considering the known details of claimant's fourteen day trip to Costa Rico where she served as a caregiver for a friend in assessing her RFC and weighing the medical opinion evidence).[5]

For these reasons, the ALJs assessment of the opinions of Drs. Kostic and Khaja is supported by substantial evidence.

### B. The ALJ's assessment of Claimant's subjective statements regarding her symptoms is supported by substantial evidence.

Next, Claimant argues that the ALJ improperly assessed Claimant's subjective statements of her symptoms. (Dckt. #19 at 12-14). The Court, however, disagrees.

Any challenge to the ALJ's symptom evaluation faces a high hurdle. The Court will not overturn the ALJ's findings regarding Claimant's subjective symptoms unless they are "patently

---

[5] Claimant's reliance on the decisions in *Murphy v. Colvin*, 759 F.3d 811 (7th Cir. 2015) and *Lorena T. v. Saul*, No. 18-CV-6348, 2020 WL 977967 (N.D.Ill. Feb. 28, 2020), is misplaced because those decisions are distinguishable. In *Murphy*, the record showed that claimant – who alleged that she was physically disabled by a stroke – took a relaxing vacation to Mexico with family members where she mostly laid in the sun and engaged in no strenuous activity. *Murphy*, 759 F.3d at 817. As such, the Seventh Circuit held that the record did not indicate how going on such a vacation was inconsistent with claimant's alleged degree of physical limitation. *Id.*; *cf. Behlman*, 2020 WL 6889187, at *6 (distinguishing *Murphy* where claimant was "claiming disability based on severe mental impairments which she claims prevent her from even getting out of bed, not the physical impairments at issue in *Murphy*."). In *Lorena T.*, the court similarly found that the ALJ's adverse credibility finding was "problematic" where the record contained insufficient evidence of what claimant did on her vacations to determine whether her trips were inconsistent with her symptoms to the point where her credibility would be diminished. *Lorena T.*, 2020 WL 977967, at *7.

wrong," meaning they lack any explanation or support in the record. *Wilder v. Kijakazi*, 22 F.4th 644, 654 (7th Cir. 2022); *Elder*, 529 F.3d at 413-14. SSR 16-3p provides guidance to ALJs for assessing a claimant's symptoms by laying out a two-step process in which the ALJ first determines whether the claimant has a medically determinable impairment that could reasonably be expected to produce her symptoms. SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017); *Wilder*, 22 F.4th at 654.

The ALJ then must evaluate the "intensity, persistence, and functionally limiting effects" of the individual's symptoms to determine the extent to which the symptoms affect the individual's ability to do basic work activities. *Id*. In making this evaluation, the ALJ should consider the entire case record, as well as: (1) the claimant's daily activities; (2) location, duration, frequency, and intensity of pain or symptoms; (3) precipitating and aggravating factors; (4) type, dosage, and side effects of medication; (5) treatment other than medication; (6) any measures other than treatment the individual uses to relieve symptoms; and (7) any other factors concerning the claimant's functional limitations and restrictions. SSR 16-3p, 2017 WL 5180304, at *7; 20 C.F.R. §416.929. Although the Seventh Circuit has "cautioned ALJs not to equate such activities with the rigorous demands of the workplace," *Alvarado v. Colvin*, 836 F.3d 744, 750 (7th Cir. 2016) (citations omitted), "it is entirely permissible to examine all of the evidence, including a claimant's daily activities, to assess whether testimony about the effects of [her] impairments was credible or exaggerated." *Id*., quoting *Loveless*, 810 F.3d at 508 (internal quotation marks omitted).

Here, when discussing Claimant's subjective statements regarding her symptoms, the ALJ summarized Claimant's medical history and hearing testimony regarding her symptoms. (R. 66-67). Based on his review, the ALJ found that Claimant's medically determined

13

impairments could reasonably be expected to cause some of her alleged symptoms and that she did experience difficulty in social situations. (R. 67, 71-72). However, the ALJ also found that Claimant's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. 67).

Claimant alleges that her mental health symptoms rendered her isolated and fully reliant on her children for in-home assistance and transport; she said she could not remember anything and therefore could not work. (R. 93-98). The ALJ properly found that these severe allegations were not fully supported by the record for multiple reasons. (R. 71-72).

First, the ALJ cited to the medical record and found that: (1) between her initial treatment for PTSD, depression, and anxiety in April 2016 and July 2016, Claimant felt better via prescribed medications; (2) Claimant's mental health records continued to show positive response to medication treatment through 2019; (3) Claimant was observed to be cooperative, alert, showed good eye contact, demonstrated good insight, judgment, and intact thought processes with generally normal mental status examinations by mental health professionals; (4) Claimant denied flashbacks and reported getting better sleep while on her medications in 2018 and 2019; (5) Claimant took multi-month trips to Bosnia in 2018 and 2019; and (6) following her 2019 trip to Bosnia, Claimant reported feeling better despite running out of medication two weeks prior to her return. (R. 70-71). The ALJ's reliance on these reasons to discount Claimant's subjective statements is supported by regulations and precedent. *See* 20 C.F.R. §404.1529(c)(3); SSR 16-3p, 2017 WL 518004, at *7; *Prill*, 23 F.4th at 738; *Jeske v. Saul*, 955 F.3d 583, 592 (7th Cir. 2020); *Simila v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009); *Lewis v.*

*Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) ("One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence.").

Second, the ALJ outlined the conservative nature of Claimant's treatment for her mental condition, which primarily included the medication treatment outlined above. Courts in this Circuit have held that "an ALJ is entitled to consider the routine and conservative nature of a claimant's treatment in assessing the claimant's credibility," *Annette S. v. Saul*, No. 19 C 6518, 2021 WL 1946342, at *12 (N.D.Ill. May 14, 2021) (citing *Simila v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009)); *see also Prill*, 23 F.4th at 749 (7th Cir. 2022) (conservative treatment is substantial evidence to demonstrate lack of disabling conditions). The ALJ also permissibly considered the fact that there is "no evidence of emergency room treatment or hospitalizations related to an exacerbation of mental health symptoms," (R. 65), in evaluating the credibility of Claimant's subjective statements. *See, e.g.*, *Connour v. Barnhart*, 42 Fed.Appx. 823, 830 (7th Cir. 2002); *Ella B. v. Kijakazi*, No. 21-CV-4530, 2023 WL 4999890, at *8 (N.D.Ill. Aug. 4, 2023).

Third, the ALJ permissibly considered Claimant's international travel to Bosnia for multi-month trips as one of many reasons for discounting her subjective complaints. *See Schmidt v. Astrue*, 496 F.3d 833, 844 (7th Cir. 2007); *see also Mitze*, 782 F.3d at 882 (ALJ permissibly considered international travel as part of combination of activities that undermined claimant's subjective complaints of pain); *Dallas E. v. Kijakazi*, No. 20 C 2717, 2021 WL 4635802, at *7 (N.D.Ill. Oct. 7, 2021) ("The ALJ's reasoning with respect to Dallas's trip to Kentucky supports her discounting his testimony about the effectiveness of his treatment."); *Ortega v. Berryhill*, No. 17 C 2527, 2018 WL 4144636, at *5 (N.D.Ill. Aug. 30, 2018); *Schnittker v. Colvin*, No. 1:12-CV-01694-JMS, 2013 WL 5487866, at *6 (S.D.Ind. Sept. 27,

2013) ("[T]he ALJ determined that the record contains many facts inconsistent with the degree of disability Mr. Schnittker alleged, such as extensive international travel, occasional negative test results that ran contrary to Mr. Schnittker's complaints, and period during which his symptoms significantly improved in conjunction with treatment.").

Claimant ignores much of the ALJ's cited reasons for discounting her subjective statements and asserts that he improperly relied upon Claimant's ability to relate with her children, the fact of her international travel, and her conservative treatment in reaching his findings. (Dckt. #19 at 13). Even if any of these allegations were meritorious – they are not as stated above[6] – the ALJ's decision to discount Claimant's subjective statements was not patently wrong where, as here, the ALJ provided several other reasons that were adequately supported by the record. *See, e.g.*, *Schrank v. Saul*, 843 Fed.Appx. 786, 789 (7th Cir. 2021) ("Even if the ALJ's other reason for discounting Schrank's testimony . . . was not substantiated by the record, we would not reverse the credibility determination as long as the ALJ provided at least one reason to support the finding"). As such, the ALJ's assessment of Claimant's subjective complaints is supported by substantial evidence.

**C.     The ALJ's formulation of Claimant's RFC is supported by substantial evidence.**

The RFC is an assessment of what work-related activities the claimant can perform despite her limitations." *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *Murphy*, 759, F3d at 817; *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022) (The RFC "is the most an individual can work despite his or her limitations or restrictions."). The RFC must be assessed based on all the relevant evidence in the record. 20 C.F.R. §404.1545(a)(1). The task of

---

[6] *See also Crowell*, 72 F.4th at 818 (finding that the ALJ's consideration of claimant's "ability to care for her own children" was within his discretion).

assessing a claimant's RFC is reserved to the Commissioner. *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995). "When determining a claimant's RFC, the ALJ must consider the combination of all limitations on the ability to work, including those that do not individually rise to the level of a severe impairment, . . . [and a] failure to fully consider the impact of non-severe impairments requires reversal." *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010) (citation omitted); *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003).

Claimant argues that "the ALJ erred by failing to address a line of evidence supportive of [Claimant's] need to be off-task despite summarizing some of the mental health treatment findings." (Dckt. #19 at 11). Claimant attacks the ALJ's accommodations for her mental impairments in the RFC as insufficient to accommodate her stress because she "dealt with stress by isolating in bed." (Dckt. #19 at 13). According to Claimant, the RFC was untethered to the evidence in that the ALJ provided no "explanation whatsoever" for "declin[ing] to adopt a supported off-task time limitation," which, according to Claimant, was a supported finding because Claimant "preferred" to remain isolated and in bed. (Dckt. #19 at 11, 15).

Again, the Court disagrees. As stated above in Section III(A), the ALJ analyzed and discounted the opinion evidence which indicated that Claimant required time absent from work and off-task. Moreover, the ALJ accounted for Claimant's mental impairments in the RFC by stating that she would be "limited to work involving simple tasks. She may have only occasional interaction with the public, in the work setting, and only occasional interaction with co-workers with no tandem tasks involved." (R. 65). The ALJ's RFC follows the recommendations of the state agency psychological consultants regarding Claimant's non-exertional limitations, (R. 72-73), and such reliance is permissible. *See, e.g.*, *Capman v. Colvin*, 617 Fed.Appx. 575, 577-79 (7th Cir. 2015) (noting the ALJ's reliance on the state agency psychological consultant when

17

assessing claimant's RFC); *Varga v. Colvin*, 794 F.3d 809, 811-14 (7th Cir. 2015) (same). The ALJ also explained – at length – the reasons he adopted the RFC limitations he found supported by the record by citing evidence weighing for and against a finding of disability. (R. 65-74); *Young*, 362 F.3d at 1000; 20 C.F.R. §404.1545(a)(1).

The RFC formulated by the ALJ adequately addressed Claimant's moderate limitations in interacting with others and in concentrating, persisting or maintaining pace, and her mild limitations in both understanding, remembering or applying information and adapting or managing herself. *See, e.g.*, *Crowell*, 72 F.4th at 817 (affirming an RFC assessment with comparable limitations for claimant who had moderate limitations in understanding, remembering, or applying information, interacting with others, and in her ability to concentrate, persist, and maintain pace); *Morrison v. Saul*, 806 Fed.Appx. 469, 474 (7th Cir. 2020) ("limiting Morrison to jobs involving 'simple and detailed, one-to-five step instructions only' adequately accounted for the only deficits in concentration, persistence, and pace that the ALJ found supported by the record"); *Pytlewski v. Saul*, 791 Fed.Appx. 611, 616 (7th Cir. 2019) (the ALJ "tailored Pytlewski's workplace setting to accommodate for Pytlweski's anxiety, depression, and anger issues by limiting his interaction with people and restricting him from making high-stakes decisions."); *Dudley v. Berryhill*, 773 Fed.Appx. 838, 842 (7th Cir. 2019) ("the ALJ here specifically limited Dudley to 'work requiring the exercise of only simple judgment,' – a limitation that specifically accounts for Dudley's concentration difficulties."); *Nina Joyce H. v. Saul*, No. 18 C 4913, 2020 WL 212771, at *9-10 (N.D.Ill. Jan. 14, 2020) (limiting claimant to "average production pace" was sufficient to account for her moderate limitation in maintaining pace).

Contrary to Claimant's contention, the ALJ found that Claimant's preference to stay at home by herself was contradicted by record evidence that she "responded well to medication and that mental status examinations have remained within normal limits, even with some lapses in medication" and took multi-month long trips to Bosnia to see her ailing parents.[7] (R. 71). The ALJ's consideration of these factors was permissible. *Supra*, at Sections III(A) and III(B). The ALJ found that Claimant's history of conservative treatment and lack of emergency medical care weighed against more extreme limitations in the RFC, (R. 71-72), and consideration of these factors was likewise appropriate. *Supra*, at Section III(B). Furthermore, the ALJ properly relied on the state agency psychological consultants, who unanimously opined that Claimant's medically determinable mental impairments would not interfere with her regular attendance at work nor would they interfere with her ability to complete a typical workday. (R. 72-73) (citing R. 104-17, 139-57); *supra*, at Section III(A).

Essentially, Claimant asks this Court to reweigh the evidence and modify the RFC by substituting its judgment for the ALJ's. (*See* Dckt. #19 at 11-12). The Court will not – and, indeed, cannot – oblige Claimant's request. *See, e.g.*, *McKinzey*, 641 F.3d at 889; *Elder*, 529 F.3d at 413. As the Seventh Circuit has made clear:

> [A]n ALJ's job is to weigh conflicting evidence, and the loser in such a process is bound to believe that the finder of fact should have been more favorable to his cause. The substantial-evidence standard, however, asks whether the administrative decision is rationally supported, not whether it is correct (in the sense that federal judges would have reached the same conclusions on the same record).

---

[7] Claimant cites to numerous medical reports in an attempt to support her allegations that physicians noted "[r]epeatedly abnormal mood findings on mental status examinations." (Dckt. #19 at 10). However, those reports note both positive and negative mental health findings. (R. 390-93 ("P[atient is] doing better & psychiatrically stable," and requested a three month supply of medications as she will be out of the country); R. 429 (demonstrating sad mood but continued agreed conservative medication treatment); R. 514 (demonstrating sad mood with intact thought processes and no distress or perceptual disturbances)).

*Sanders v. Colvin*, 600 Fed.Appx. 469, 470 (7th Cir. 2015). The ALJ properly considered Claimant's medical history and other evidence and formulated an RFC that accommodated for Claimant's impairments he felt justified by the record, thus providing an "accurate and logical bridge" between the evidence and the RFC. *Craft*, 539 F.3d at 673.

## CONCLUSION

For the foregoing reasons, Claimant's motion for summary judgment, (Dckt. #19), denied and the Commissioner's motion for summary judgment, (Dckt. #20), is granted. The decision of the Commissioner is affirmed.

**Date: October 19, 2023**

　　　　　　　　　　　　　　　　　　　　　　　　　**Jeffrey I. Cummings**
　　　　　　　　　　　　　　　　　　　　　　　　　**United States Magistrate Judge**